UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
──────────────────────────────

TERRIS HANKS,

                              Petitioner,

   v.
                                                    9:14-CV-0618
CHARLES F. KELLY,                                   (BKS)
                              Respondent.

──────────────────────────────

APPEARANCES:

TERRIS HANKS
08-B-0878
Petitioner, pro se
Marcy Correctional Facility
P.O. Box 3600
Marcy, NY 13403

HON. ERIC T. SCHNEIDERMAN               ALYSON J. GILL, AAG
Attorney for Respondent
Office of the Attorney General
120 Broadway
New York, New York 10271

BRENDA K. SANNES
United States District Judge

## DECISION AND ORDER

## I.    INTRODUCTION

         Petitioner Terris Hanks filed a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254 and a memorandum of law.  Dkt. No. 1, Petition ("Pet.") at 1-6;[1] Memorandum

of Law Supporting Writ of Habeas Corpus ("Mem.") at 7-44.  He argues: (1) trial counsel was

ineffective because he failed to include certain arguments in his motion to suppress

evidence; and (2) appellate counsel was ineffective.  Pet. at 4; Mem. at 13-44.  Respondent

────────────────

         [1]  The cited page numbers for the petition and memorandum refer to those generated by the Court's
electronic filing system.

opposes the petition.  Dkt. No. 15, Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("R. Mem."); Dkt. No. 15-1, Answer; Dkt. No. 17, State Court Records ("SR").  Petitioner filed a reply.  Dkt. No. 9, Traverse in Opposition ("Reply.").[2]

For the reasons that follow, the petition is denied and dismissed.

## II.    RELEVANT BACKGROUND

### A.    The Charges and the Investigation

In August 2007, an Onondaga County grand jury indicted petitioner for second degree conspiracy (N.Y. Penal Law §105.15), third degree criminal possession of a controlled substance (N.Y. Penal Law §220.16(1)), second degree criminal sale of a controlled substance (N.Y. Penal Law §220.41(1)), and first degree criminal possession of a controlled substance (N.Y. Penal Law §220.21(1)).  Pet. at 1; Dkt. No. 17-15 at SR 1927-28, Affidavit of Paul G. Carey, Esq., Dec. 4, 2007.  The charges stemmed from petitioner's involvement in a narcotics distribution network operating in and around the City of Syracuse.  R. Mem. at 1-2.

The investigation, led by the Attorney General's Statewide Organized Crime Task Force ("OCTF") with the assistance of the Onondaga County District Attorney and local, state and federal law enforcement agencies, began in September 2006 and concluded in July 2007.  During the investigation, the county court issued ten pen register authorizations beginning in November 2006, and a series of nine eavesdropping warrants, to assist in the investigation.  Dkt. No. 17-4 at SR 294-95, Decision/Order, Aloi, J., Aug. 6, 2010.  The first

---

[2] Respondent's original response was filed on November 7, 2014.  Dkt. No. 7, Answer; Dkt. No. 7-1, Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus; Dkt. No. 8, State Court Records.  Petitioner filed his reply, Dkt. No. 9, and then asked the Court to direct the respondent to re-file the state court records to include additional documents and to correct the pagination.  Dkt. No. 10, Letter Motion. Respondent agreed with petitioner, and the Court granted petitioner's request.  Dkt. No. 11, Letter Response; Dkt. No. 12, Text Order.  Respondent's corrected memorandum of law and state court record were filed on December 17, 2014.  Dkt. Nos. 15, 17.

warrant, issued on January 11, 2007, authorized the OCTF to wiretap phones used by Ronald Anderson, a suspected cocaine dealer. Dkt. No. 17-7 at SR 607-610, Eavesdropping Warrant. The second warrant reflected an update in the telephone numbers used by Anderson. *Id.* at SR 650-53, Amended Eavesdropping Warrant. On February 8, 2007, a third warrant extended the OCTF's authorization to wiretap Anderson's phones, and extended the OCTF's authority to wiretap phones used by Anderson's suspected drug suppliers, including Jorge Santos, Santos's brothers, and Tywan Gregory. *Id.* at SR 688-92, Amended and Extended Eavesdropping Warrant. The fourth warrant, issued on March 7, 2007, extended the OCTF's authorization to wiretap phones belonging to the Santos brothers and Gregory. Dkt. No. 17-8 at SR 747-51, Amended and Extended Eavesdropping Warrant.

On April 4, 2007, the court issued a fifth warrant authorizing the OCTF to wiretap phones belonging to petitioner, whom law enforcement officials believed was Gregory's cocaine dealer. Dkt. No. 17-8 at SR 803-807, Amended and Extended Eavesdropping Warrant ("fifth warrant"); SR 824-63, Affidavit in Support of an Application for an Amended and Extended Eavesdropping Warrant ("fifth warrant application"). The warrant was extended on May 3, 2007. Dkt. No. 17-9 at SR 888-93, Amended and Extended Eavesdropping Warrant. Calls intercepted pursuant to the fifth warrant and its extension gave the OCTF probable cause to stop and search a car, in which petitioner was an occupant, returning to New York with a quantity of cocaine purchased in North Carolina. Dkt. No. 17-13 at SR 1651-52, Search and Seizure Warrant; Dkt. No. 17-13 at SR 1653-79, Search Warrant and Seizure Warrant Application.

### B. The Motion to Suppress

In papers dated December 4, 2007, counsel filed an omnibus motion that included,

3

among other things,[3] a motion to suppress evidence obtained as a result of the fifth warrant and the search warrrant, arguing that the fifth warrant application did not show that normal investigative procedures failed, were unlikely to succeed, or were too dangerous to use, as required pursuant to New York Criminal Procedure Law ("CPL") §700.15.  Dkt. No. 17-15 at SR 1926, Notice of Motion; SR 1927-55, Affidavit.  The People opposed the motion.  Dkt. No. 17-15 at SR 1961-69, People's Response to Defendant's Omnibus Motion.

On December 20, 2007, petitioner appeared with counsel to discuss the motions.  Dkt. No. 17-15 at SR 1975, Motions Transcript.  Petitioner rejected a proposed plea agreement that would have required him to plead guilty to second degree criminal sale of a controlled substance in satisfaction of the indictment, and to waive his right to appeal, in exchange for a promised determinate sentence of eight years in prison followed by five years post-release supervision.  *Id.* at SR 1971.  The court explained that if petitioner was convicted of first degree criminal possession of a controlled substance, as charged, he faced no less than twelve and no more than twenty-four years in prison.  *Id.* at SR 1972-75.  The court further stressed that if petitioner was convicted on each count of the indictment, some of the sentences imposed could run consecutively.  *Id.* at SR 1975.  After petitioner rejected the offer, the court adjourned the case for further proceedings on petitioner's remaining motions. *Id.* at SR 1975-79; Dkt. No. 17-15 at SR 1958, Decision/Order, Aloi, J., Dec. 17, 2007.

On January 22, 2008, trial counsel submitted a letter in support of his motion to suppress, in which he argued the fifth warrant application failed to specify facts that would support probable cause; there was no showing that "normal investigate techniques

---

[3] Counsel also moved to inspect the grand jury minutes, and on December 17, 2007, the trial court denied that motion.  Dkt. No. 17-15 at SR 1958, Decision/Order, Aloi, J, Dec. 17, 2007.

specifically targeted at petitioner would not have produced additional information;" and the warrant applicant's description "with regards to previous physical surveillance was simply boiler plate verbatim from language utilized in a previous wiretap (wiretap #4)" and was insufficient to establish probable cause.  Dkt. No. 17-15 at SR 1984-85, Letter.

On January 25, 2008, petitioner appeared in court with counsel to discuss whether the parties agreed on a disposition of the case.  Dkt. No. 17-15 at SR 1986-94, Proceeding.  Counsel reminded the court he submitted "numerous motions with regard to electronics surveillance and the legitimacy of the eavesdropping warrant that was issued," and that petitioner wanted to speak to the court "with regard to some of his legal research that he's done ... and how he thinks it's important."  *Id.* at SR 1987.  Petitioner told the court that he had the opportunity to review the information counsel provided to him, and that "[o]verall [counsel's] representation is really legitimate."  *Id.* at SR 1988.  Petitioner asked permission to submit a supplemental pro se memorandum of law in support of the motion to suppress, and the trial court agreed.  *Id.* at SR 1988-89.

Petitioner filed an undated memorandum of law in which he argued that: the fifth warrant application failed to establish that the "OCTF either adequately pursued less intrusive investigative methods, or that less intrusive methods would have been unlikely to succeed if tried;" the OCTF did not seek a "Pen Register" before resorting to wiretapping; the People alleged no "difficulties inherent in the use of physical surveillance" against him; the People failed to make an "independent showing of necessity" for the eavesdropping warrant against him, and "applications contained material <u>false</u> allegations of necessity from previous affidavits;" and the court abused its discretion by issuing an eavesdropping warrant based on "template allegations of necessity carried-over from affidavit to affidavit with out [sic] a

5

particularized showings [sic] of necessity to wiretap" his phone.  Dkt. No. 17-15 at SR 1995-99, Memorandum of Law in Support of Motion to Convert a [sic] Eavesdropping and Search Warrant Application (emphasis in original).  Petitioner appeared to agree that the first warrant application, targeting Anderson, contained a "particularized detailed rendition of facts" establishing that the OCTF used "a wide range of investigative techniques in the pre-wiretap phase of the investigation," and alleged that normal investigative methods were unlikely to succeed as to Anderson.  *Id.* at SR 1998-99.  But he argued that the fifth warrant application simply repeated the original statements of fact demonstrating necessity as to Anderson, and that those allegations were not relevant to petitioner.  *Id.* at SR 1999-2004.  Finally, petitioner argued that the May 28, 2007 search warrant, "granted on the strength of drug related conversations intercepted" under the eavesdropping warrants, was invalid and all evidence seized pursuant to the search warrant had to be suppressed.  *Id.* at SR 2004.

The trial court issued a written decision denying petitioner's motions.  Dkt. No. 17-15 at SR 2014-22, Decision/Order, Aloi, J., Feb. 7, 2008.[4]  The court stated that it reviewed the motion papers, the People's response, and petitioner's "memorandum of law in support of his motion" when making its decision, but found defendant's arguments were meritless.  *Id.* at SR 2015-22.  The first application showed "a sophisticated drug operation about which the investigators had learned significant but limited information using other investigative

---

[4] During the February 8, 2008 court appearance, the assistant attorney general asked the court for time to respond to the claims petitioner raised in his pro se papers, and the court agreed.  Dkt. No. 17-15 at SR 2012-13.  The People's response is dated February 11, 2008.  Dkt. No. 17-15 at SR 2023-2025, People's Response to Defendant's Pro Se Motion "To Convert a Eavesdropping Warrant and Search Warrant Application."  Although the trial court's decision denying the motion is dated February 7, 2008, the decision was given to the parties during the February 13, 2008 court appearance.  *Id.* at SR 2029 (the court stated, "It's my understanding that your client wants to further review the Court's decision that I have just handed to you relative to the Court decision on the eavesdropping application.").

6

procedures," and that "those means alone had not and were not likely to accomplish the objectives of their investigation ... to identify and gather evidence against other potential co-conspirators." *Id.* at SR 2021. The court further explained that surveillance alone would not be effective because the narcotics business was conducted "inside private buildings and residences and by use of the telephone," and investigators lacked an informant or undercover officer who could infiltrate the operation. *Id.* at SR 2021-22.

Finally, the court ruled that the applications established probable cause for wiretapping petitioner because "during February, March and April of 2007, while intercepting telephone lines affiliated with Tywan Gregory, numerous conversations were intercepted over those lines between Tywan Gregory and [petitioner] which were interpreted to involve the purchase and sale of narcotic drugs." Dkt. No. 17-15 at SR 2017. Specifically, the court noted the following intercepted calls: on February 12, 2007, petitioner called Tywan Gregory using a phone listed in petitioner's name and, during that conversation, Gregory identified petitioner as Terry Hanks; petitioner met with Gregory on March 21, 2007; Gregory and an unidentified woman identified petitioner as "Terry" in two calls intercepted and recorded on petitioner's cell phone on March 22, 2007; on April 16 and April 20, 2007, petitioner met with co-defendant Christopher Reynolds; on April 23, 2007, petitioner met with Gregory, Eduardo Barrot and Christopher Reynolds; and on May 16, 2007, investigators intercepted a call in which petitioner identified himself as "T. Hanks." Dkt. No. 17-15 at SR. 2017-19.

In a court appearance on February 13, 2008, the trial court stated that a plea offer was made by the People and that under its terms, petitioner would plead guilty to second degree criminal possession of a controlled substance, and waive his right to appeal, in exchange for a determinate sentence of seven years in prison followed by five years post-release

7

supervision.  Dkt. No. 17-2 at SR 250-51, Plea Offer (II).  Petitioner did not want to waive his

right to appeal.  *Id.* at SR 251.  The trial court explained that if petitioner pleaded guilty to the

entire indictment, he could retain his right to appeal, and the court would impose the

minimum sentence permitted by law on each count, and order the sentences to run

concurrently.  *Id.* at SR 252-53.  The court stressed that petitioner could not receive less than

12 years in prison if he was convicted of first degree criminal possession of a controlled

substance after a trial.  *Id.* at 253.  The case was adjourned so that petitioner could further

review the court's decision denying his motion to suppress.  *Id.* at SR 253-54.

### C.    The Plea and Sentence

On February 19, 2008, petitioner rejected the People's offer and opted to plead guilty

to the entire indictment in exchange for retaining his right to appeal and the court's promise

to sentence him to serve 4 ½ to 9 years in prison for second degree conspiracy; 7 years

followed by 1 ½ years post-release supervision for third degree criminal sale of a controlled

substance; 7 years followed by 1 ½ years post-release supervision for second degree

criminal sale of a controlled substance; and 12 years followed by 5 years post-release

supervision for first degree criminal sale of a controlled substance.  Dkt. No. 17-2 at SR 256-

59, Plea.

Petitioner confirmed that he understood he was giving up the right to a jury trial, at

which he could cross-examine the People's witnesses, testify and call witnesses on his own

behalf.  Dkt. No. 17-2 at SR 260.  He understood that he was pleading guilty to felony

charges, and that if he was convicted of another felony within ten years he must receive

mandatory state prison.  *Id.* at SR 260-61.  Petitioner confirmed that he understood his guilty

8

plea had the same legal effect as if a jury found him guilty after a trial, and that he did not

consume drugs or alcohol before coming to court. *Id.* at SR 261-62. He assured the court

he fully understood the terms of the plea agreement, and confirmed that no one forced or

threatened him to plead guilty. *Id.* at SR 262. He admitted the allegations in each count of

the indictment to which he was pleading guilty were true, and entered formal guilty pleas on

those counts. *Id.* at SR 262-65. The trial court accepted petitioner's plea, finding that it was

knowing, intelligent and voluntary. *Id.* at SR 265.

On March 18, 2008, petitioner appeared for sentencing. Dkt. No. 17-2 at SR 267-74,

Sentence. Petitioner admitted that in 1994 he was convicted of second degree criminal

possession of a controlled substance and that in 1995 he was convicted of first degree

knowingly making or possessing dangerous contraband in prison, and he did not want to

contest the validity of those convictions. *Id.* at SR 269. Petitioner told the court, "I accept

responsibility for my actions," and explained that he pled guilty to all counts of the indictment

to preserve his appeal rights. *Id.* at SR 270-71. He also told the court its decision denying

his motion to suppress was silent as to the arguments he made in his pro se brief. *Id.* at SR

271. The trial court responded that it considered petitioner's pro se arguments and

addressed them in its written decision. *Id.* Petitioner was sentenced as promised,[5] and he

filed a notice of appeal. *Id.* at SR 272-73; Dkt. No. 17-15 at SR 2055, Notice of Right to

Appeal.

### D.    State Court Proceedings

In January 2010, before his direct appeal was perfected, petitioner moved to vacate

---

[5]  Petitioner was also ordered to pay a $270.00 mandatory surcharge and a $50.00 DNA Data Bank fee. Dkt. No. 17-2 at SR 273. The surcharge was deferred until petitioner's release from custody. *Id.*

his conviction pursuant to New York Criminal Procedure Law ("CPL") §440.10. Dkt. No. 17 at SR 2-6, Affidavit in Support of Motion to Vacate Judgment Pursuant to C.P.L. 440.10 ("440 Motion I"). He argued that after his conviction, he discovered that the eavesdropping warrant applications contained materially false allegations of necessity. *Id.* at SR 2-5. Petitioner also alleged that some of the search and eavesdropping warrant applications relied on illegal warrantless GPS surveillance, and trial counsel was ineffective for not arguing that the fifth warrant application failed to establish probable cause because there were no transcripts or expert analysis of the intercepted calls. *Id.* at SR 5-6; SR 7-70, Memorandum of Law in Support of Motion to Vacate a Judgment of Conviction Pursuant to Article 440 of the N.Y.C.P.L.; SR 71-186, Exhibits. In February 2010, petitioner submitted a supplemental affidavit detailing efforts he made to obtain an affidavit from trial counsel explaining his representation. *Id.* at SR 188-93, Supplemental Affidavit in Support of CPL 440 Motion to Vacate Judgment of Conviction.[6] The People opposed the motion, and petitioner filed a reply. Dkt. No. 17-2 at SR 202-15, Affirmation in Opposition to Motion to Vacate Judgment; Dkt. No. 17-3 at SR 275-92, Defendants [sic] Affidavit in Support of Defendant Reply Memorandum, C.P.L. 440.10 Motion to Vacate Judgment.

On August 6, 2010, the trial court denied petitioner's 440 Motion without a hearing. Dkt. No. 17-4 at SR 293-303. The court ruled that petitioner's claims relating to the eavesdropping warrants were record-based and could be raised on direct appeal. *Id.* at SR 297-300 (citing CPL §§440.10(2)(b)). The court then rejected petitioner's ineffective

---

[6] On April 18, 2010, petitioner moved the trial court to summarily grant his motion because the People failed to respond. Dkt. No. 17-1 at SR 195-98, Affidavit in Support of an Order Summarily Granting the Defendant's Judgment of Conviction Pursuant to C.P.L. 440.30(3) Vacated as a Result of the People's Failure to Respond or Oppose. Petitioner's motion was denied because the trial court granted the People an extension of time to respond to his motion. *Id.* at SR 200.

assistance of counsel claim on the merits, ruling that petitioner "clearly failed to show that his lawyer's representation was ineffective or that he was prejudiced in any way by such representation." *Id.* at SR 300-301. Specifically, the court noted that counsel filed a suppression motion that "sufficiently detailed and set forth factual allegations that the eavesdropping and search warrant applications failed to establish probable cause." *Id.* at SR 301. The court concluded that "[m]erely now stating that the facts and arguments made by defense counsel were not accurate does not by virtue thereof otherwise constitute the ineffective assistance of counsel." *Id.* at SR 301.

Petitioner sought leave to appeal, and on April 19, 2011, the Appellate Division denied his request. Dkt. No. 17-4 at SR 305-306, Notice of Application for Leave to Appeal a Judgment of Conviction Pursuant to N.Y.C.P.L. 446.15 and 22 N.Y.C.R.R. §1000.13(n); SR 307-22, Affidavit in Support of Leave to Appeal Pursuant to CPL §460.15 and Permission to Consolidate the Matter with a Pending Action Pursuant to Appellate Rule 22 NYCRR §1000.13(n); SR 327, Order.

On April 11, 2011, appellate counsel filed a brief in which she argued: (1) the trial court erred in denying his motion to suppress evidence because the eavesdropping warrant failed to allege sufficient facts to conclude that normal investigative techniques were tried and failed or were likely to fail; and (2) the county court lacked probable cause to issue all but the first eavesdropping warrant because the warrant applications did not include transcripts and expert interpretation of the seized conversations. Dkt. No. 17-5 at SR 328-58, Brief for Defendant/Appellant; SR 359-512, Appendix; Dkt. No. 17-7 at SR 563-709 and Dkt. No. 17-8 at SR 710-871, (Stipulated) Record on Appeal, Vol. I; Dkt. No. 17-9 at SR 872-1059 and Dkt. No. 17-10 at SR 1060-1226, (Stipulated) Record on Appeal, Vol. II; Dkt. No. 17-11 at SR

1227-1394 and Dkt. No. 17-12 at SR 1395-1549, (Stipulated) Record on Appeal, Vol. III; Dkt. No. 17-13 at SR 1550-1696 and Dkt. No. 17-14 at SR 1697-1832, (Stipulated) Record on Appeal, Vol. IV; Dkt. No. 17-15 at SR 1833-2072, (Stipulated) Record on Appeal, Vol. V.

Petitioner filed a pro se supplemental brief in which he argued: (1) the People improperly used eavesdropping warrants to intercept his calls without establishing sufficient necessity; and (2) his guilty plea was invalid and improperly induced by the trial court because the court denied his right to contest the warrants when it failed to address his pro se arguments in its decision denying suppression. Dkt. No. 17-6 at SR 514-62, Brief for Defendant/Appellant, Supplemental Brief, Pro Se. The People opposed. Dkt. No. 17-16 at SR 2072-2119, Brief for Respondent. Petitioner's appellate counsel filed a reply brief. Dkt. No. 17-17 at SR 2120-37, Reply Brief for Defendant/Appellant.

On September 30, 2011, the Appellate Division affirmed. *People v. Hanks,* 87 A.D.3d 1370 (4th Dep't. 2011). The court first found that petitioner challenged "only the first warrant and the fifth amended and extended warrant," and that he lacked "standing to challenge the first warrant inasmuch as it related solely to a coconspirator." *Id.* at 1380-71. The Appellate Division further found that the record supported the trial court's finding that the application for the fifth amended and extended warrant established that normal investigative procedures were tried and failed or reasonably appeared unlikely to succeed if tried, or to be too dangerous to use:

> In an affidavit supporting that warrant application, a detective detailed the traditional investigative techniques, including but not limited to physical surveillance of defendant and the use of confidential informants, that were utilized by Task Force members beginning four months prior to the issuance of the first warrant and continuing up to the date of the application for the fifth amended and extended warrant. The detective averred that, despite continued attempts, use of those traditional investigative techniques alone would not

permit the Task Force to identify and successfully prosecute all suppliers of
controlled substances, a stated goal of the investigation. Further, because the
detective provided details regarding the past and continued attempts to use
traditional investigative techniques in connection with the investigation of
defendant and his coconspirators, it cannot be said that the [Task Force] relied
solely on past investigations into [drug conspiracies] in general to support the[ ]
assertion that normal investigative techniques would be generally unproductive
in the [current] investigation.

*Id.* at 1371 (internal citations and quotation marks omitted; alterations in original). The

Appellate Division further rejected petitioner's claim that the trial court failed to address on

the record its reasons for rejecting his pro se arguments in favor of suppression. The court

explained that the arguments were "plainly inadequate," and that because the memorandum

was "unsworn and unsigned," it did not "contain any 'sworn allegations of fact' supporting his

arguments[.]" *Id.* (citing CPL 710.60 (1)). Finally, the Appellate Division concluded that

petitioner "failed to preserve the remaining contentions in his main and pro se supplemental

briefs for our review (*see* CPL 470.05 [2])" and declined to "exercise [its] power to review

those contentions as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [a])."

*Id.* at 1372.

Appellate counsel moved to reargue the appeal, claiming the Appellate Division

overlooked or misapprehended the record on appeal relating to its decision that petitioner

lacked standing to challenge the first eavesdropping warrant. She argued that the People

failed to preserve the issue of petitioner's standing to challenge the first eavesdropping

warrant because that argument was never raised in the trial court. Dkt. No. 17-18 at SR

2142-45; Affirmation in Support of Motion to Reargue. Appellate counsel also argued that

petitioner's probable cause challenge to the fifth warrant application and resulting warrant

was preserved for appellate review because it was raised in his motion to suppress and was

13

ruled on by the trial court. *Id.* at SR 2145-46. Reargument was granted, and on December 23, 2011, the Appellate Division amended its earlier decision by striking the part holding that petitioner lacked standing to challenge the first eavesdropping warrant. *Hanks*, 90 A.D.3d 1592 (4th Dep't. 2011).[7] The Appellate Division did not address counsel's probable cause argument. *Id.* On January 31, 2012, the New York Court of Appeals denied leave to appeal. *Hanks*, 18 N.Y.3d 883 (2012).

Petitioner filed a second CPL §440.10 motion on or about July 3, 2012, in which he argued that he was denied the right to be present at a material stage of the trial and was denied effective assistance of counsel based on inaccurate information relating to the guilty plea. Dkt. No. 17-20 at SR 2210-19, Affidavit in Support of Motion to Vacate Defendant [sic] Judgment of Conviction Pursuant to C.P.L. §440.10(1), (f), (g); SR 2220-37, Memorandum of Law; SR 2238-2386, Exhibits. The People opposed the motion. Dkt. No. 17-21 at SR 2400-2639, Affirmation in Opposition to Motion to Vacate Judgment with Exhibits. On January 16, 2013, the trial court denied petitioner's motion. Dkt. No. 17-20 at SR 2388-97, Decision/Order, Aloi, J., Jan. 16, 2013. On May 17, 2013, the Appellate Division denied petitioner's motion to extend the time to move for leave to appeal from the trial court's decision. Dkt. No. 17-20 at SR 2398, Order, May 17, 2013.

In papers dated August 9, 2013, petitioner filed a writ of error coram nobis in which he argued appellate counsel was ineffective. Dkt. No. 17-23 at SR 2665-69, Affidavit in Support of Error Coram Nobis; Dkt. No. 17-23 at SR 2670-2761, Appendix/Exhibits; SR 2762-2803,

---

[7] In papers dated January 20, 2012, petitioner filed a pro se motion to reargue the direct appeal. Dkt. No. 17-18 at SR 2156-60, Affidavit in Support of Motion to Reargue. He reiterated appellate counsel's claim that the People failed to preserve its argument that he lacked standing to challenge the first eavesdropping warrant. *Id.* On March 16, 2012, the Appellate Division denied his motion. *Hanks*, 93 A.D.3d 1257 (4th Dep't. 2012).

Writ of Error Coram Nobis.  The People opposed the writ.  Dkt. No. 17-25 at SR 2912-24,

Affirmation in Opposition to Motion for Writ of Error Coram Nobis; SR 2925-70, Exhibits.

Petitioner filed a reply.  Dkt. No. 17-25 at SR 2971-85, Reply to the People's Answering

Affirmation in Opposition.  On September 27, 2013, the Appellate Division denied petitioner's

motion.  Dkt. No. 17-25 at SR 2986, Order.  On April 4, 2014, the New York Court of Appeals

denied leave to appeal.  Dkt. No. 17-25 at SR 3011, Order Denying Leave.

      This action followed.

## III.    DISCUSSION

###     A.    Ground One - Ineffective Assistance of Trial Counsel

      Petitioner claims in Ground One of his petition that trial counsel was ineffective

because he filed a "pro forma and perfunctory suppression application" that contained "no

factual allegations, legal authority or rational [sic] for suppression" and he did not argue that

the county court lacked probable cause to issue the fifth eavesdropping warrant.  Pet. at 4;

Mem. at 8, 14-15, 16-18.  Petitioner claims trial counsel should have argued: (1) the fifth

warrant application failed "to state of [sic] intercepted conversation [sic] as a basis for

issuance of the initial wiretap order" issued against petitioner's phone; and (2) the fifth

warrant was issued "in violation of the warrant process under the state and federal

constitution" because there were no transcripts or expert analysis of the conversations cited

as the predicate for probable cause.  Mem. at 22-30.  According to petitioner, counsel's

failure to include these arguments in his suppression motion allowed the state the

opportunity to prosecute him "on the basis of unconstitutional [sic] obtained evidence

inadmissible in a trial."  Mem. at 34.  Finally, petitioner appears to argue that trial counsel

failed to contest the issuance of the search warrant.  Mem. at 14-15.  Respondent argues

that petitioner's ineffective assistance claims are precluded from habeas review by virtue of his counseled guilty plea. R. Mem. at 14-16. This Court agrees.

Ordinarily, once a defendant has pleaded guilty in open court, he or she may not "thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea" because the plea "represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Therefore, the focus of federal habeas review is the nature of counsel's advice of counsel to plead guilty and the voluntariness of the plea, "not the existence as such of an antecedent constitutional infirmity." *Tollett*, 411 U.S. at 266; *see North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (stating that relevant inquiry for the federal habeas court was whether the guilty plea "represent[ed] a voluntary and intelligent choice among the alternative courses of action open to the defendant"). In other words, "a petitioner may not assert pre-plea constitutional violations bearing on the valid establishment of his factual guilt" on collateral review. *United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006) (per curiam).

Here, petitioner does not challenge the voluntary and intelligent nature of his guilty plea. Nor does he allege that counsel's advice with respect to whether to plead guilty was somehow deficient - the only type of ineffective assistance claim that survives a guilty plea - and a review of the record reveals no basis to do so.[8] *See, e.g., Premo v. Moore*, 562 U.S.

---

[8] It is worth noting that despite petitioner's prior felony convictions, counsel negotiated a favorable plea agreement that required petitioner to plead guilty to second degree criminal possession of a controlled substance, and waive his right to appeal, in exchange for a determinate sentence of 7 years followed by 5 years post-release supervision. Dkt. No. 17-2 at SR 251-52, 258-59. When petitioner rejected that agreement in order to retain his right to appeal, counsel secured the court's promise to impose the minimum aggregate sentence authorized for a predicate felon, and petitioner was sentenced to an aggregate term of 12 years in prison followed by 5 years post-release supervision. Dkt. No. 17-2 at SR 272-73. As the trial court noted, however,

115, 118 (2011) ("The instant case . . . concerns the adequacy of representation in providing

an assessment of a plea bargain without first seeking suppression of a confession assumed

to have been improperly obtained."); *Tollett*, 411 U.S. at 268 ("In order to obtain his release

on federal habeas . . . , respondent must not only establish the unconstitutional

discrimination in selection of grand jurors, he must also establish that his attorney's advice to

plead guilty without having made inquiry into the composition of the grand jury rendered that

advice outside the range of competence demanded of attorneys in criminal cases.") (internal

quotation marks and citation omitted); *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir.

1996) (defendant must show that advice to plead guilty "was not within [acceptable]

standards.") (quoting *Tollett*, 411 U.S. at 267) (alteration in original).  Instead, petitioner

argues that counsel's suppression motion was deficient and that had counsel included

certain arguments in the motion, the motion would have been granted.  Pet. at 4; Mem. at 13-

34.[9]  That claim is precluded by his plea.  *Tollett*, 411 U.S. at 267.

Petitioner argues, however, that his ineffective assistance claim survives his plea

because New York permits a defendant to appeal from an adverse ruling in a pretrial

_____

petitioner faced up to 24 years in prison if convicted after trial of first degree criminal possession of a controlled substance, and if he was convicted on the rest of the counts in the indictment, some of the sentences imposed could run consecutively.  Dkt. No. 17-2 at SR 253-54; 258-60; Dkt. No. 17-15 at SR 1972-75.

[9]  Even if petitioner's claim survived his plea, he would not be entitled to habeas relief.  The trial court rejected petitioner's arguments, raised in his first CPL 440.10 motion, that trial counsel was ineffective for failing to adequately argue that the eavesdropping and search warrants did not establish probable cause because there were no transcripts of the calls or expert analysis of the intercepted conversations.  Dkt. No. 17 at SR 8, 52-69; Dkt. No. 17-4 at SR 293-303.  Trial counsel did not include these specific arguments in his motion, but the trial court's ruling that counsel made a "comprehensive" suppression motion that "sufficiently detailed and set forth factual allegations that the eavesdropping and search warrant applications failed to establish probable cause" is supported by the record, was reasonable, and was not contrary to *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  *See* Dkt. No. 17-4 at SR 301; Dkt. No. 17-15 at SR 1927-55, 1984-85, 1995-2005; *Richter*, 562 U.S. at 791 ("*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks and further citation omitted).

17

suppression hearing despite the fact that the conviction is based upon a guilty plea. Reply at 2-3; *see* N.Y. Crim. Proc. § 710.70(2) ("An order finally denying a motion to suppress evidence may be reviewed upon an appeal from an ensuing judgment of conviction notwithstanding the fact that such judgment is entered upon a plea of guilty."). He cites the Supreme Court's holding in *Lefkowitz v. Newsome*, 420 U.S. 283, 293 (1975) in support of this argument. *Id.*

In *Lefkowitz*, the Supreme Court held that "when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding." *Lefkowitz*, 420 U.S. at 293. But the *Lefkowitz* exception does not apply in this case because petitioner does not directly challenge the trial court's adverse suppression ruling, instead arguing that trial counsel failed to make sufficient arguments in support of his motion to suppress.[10] New York does not "permit a defendant to appeal ineffective assistance of counsel claims relating to events prior to the plea that do not impact the voluntariness of the plea." *Rodriguez v. Conway*, No. 1:07-CV-9863, 2009 WL 636503 at *19 n. 29 (S.D.N.Y. Mar. 13, 2009); *adopted by* 2009 WL 3094939 (S.D.N.Y. Sept. 28, 2009);

---

[10] Even assuming petitioner's papers were read to challenge the suppression ruling, *Lefkowitz* would not control. Petitioner's guilty plea would not foreclose a challenge to the trial court's suppression ruling, but the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976) would preclude federal habeas review. In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494-95. Following *Stone*, review of Fourth Amendment claims in habeas petitions is permissible only: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). New York has a corrective procedure for Fourth Amendment violations, which is facially adequate. *See* CPL §710; *Capellan*, 975 F.2d at 70 n. 1. Petitioner availed himself of that procedure by making a motion to suppress the evidence recovered as a result of the eavesdropping and search warrants. The trial court denied the motion and petitioner appealed that denial. Based on the record, there was no unconscionable breakdown in the underlying process. Therefore, any direct challenge to the suppression ruling in this case is barred by *Stone*.

18

*see Mills v. Lempke*, No. 6:14-CV-6113, 2015 WL 1632656 at *7 (W.D.N.Y. Apr. 13, 2015) ("Because defendants are not permitted under New York law to appeal ineffective assistance of counsel claims relating to events prior to the guilty plea that do not affect the voluntariness of the plea, the *Lefkowitz* exception does not apply."); *Vasquez v. Parrott,* 397 F. Supp. 2d 452, 463 n. 5 (S.D.N.Y. 2005) ("The *Lefkowitz* exception does not apply here, because claims of ineffective assistance of counsel relating to events prior to the plea that do not impact the voluntariness of the plea do not survive a guilty plea."); *People v. Petgen*, 55 N.Y.2d 529, 534-35 (1982) ("Nor does defendant's assertion in this case that he was denied effective assistance of counsel survive his plea. There is no suggestion that, aside from the asserted default of the first attorney in failing to make a suppression motion, the acceptance of the plea was infected by any ineffective assistance of counsel.... [I]t cannot be said that any ineffective assistance of counsel vitiated defendant's plea of guilty premised as it was on advice of counsel (as to which there is now no suggestion of incompetency) comprehending, inter alia, the very claims of ineffective assistance of counsel that defendant now urges on us."); *People v. Patterson*, 106 A.D.3d 757, 758 (2d Dep't. 2013) ("Since the defendant's claim of ineffective assistance of counsel, raised in his pro se supplemental brief, does not directly involve the negotiation of his plea of guilty, the defendant forfeited that claim by pleading guilty."), *lv. denied* 21 N.Y.3d 1018 (2013).

Petitioner also appears to argue that under the Supreme Court's decision in *Kimmelman v. Morrison*, 477 U.S. 365, 378 (1986), his guilty plea did not preclude him raising a claim that trial counsel was ineffective for failing to competently litigate the suppression motion. Mem. at 21-22, Reply at 3-4. Petitioner's reliance on *Kimmelman* is also misplaced. In that case, the Supreme Court held that ineffective assistance claims

19

under the Sixth Amendment in relation to counsel's performance at suppression hearings are not precluded from habeas review under *Stone v. Powell*, 428 U.S. 465 (1976), a case that bars habeas review of Fourth Amendment claims except in limited circumstances. *Kimmelman*, 477 U.S. at 382-83. But the defendant in *Kimmelman* was convicted following a bench trial, and so that case necessarily did not involve any analysis of the legal effect of a petitioner's counseled guilty plea. *See id.* ("Where a State obtains a criminal conviction *in a trial* in which the accused is deprived of the effective assistance of counsel, the State ... unconstitutionally deprives the defendant of his liberty . . . [w]e hold that federal courts may grant habeas relief in appropriate cases, regardless of the nature of the underlying attorney error.") (internal quotations and citation omitted; emphasis added); *see also Premo*, 562 U.S. at 131 ("But *Kimmelman* concerned a conviction following a bench trial, so it did not establish, much less clearly establish, the appropriate standard for prejudice in cases involving plea bargains." (citing *Kimmelman*, 477 U.S. at 389)).

In sum, petitioner's ineffective assistance claim is barred from consideration by *Tollett* and its progeny because it relates to events prior to his guilty plea that do not impact the nature of counsel's advice to plead guilty or voluntariness of the plea. *Tollett*, 411 U.S. at 266, 268; *see Haring v. Prosise*, 462 U.S. 306, 321 (1983) ("Our decisions in *Tollett* and the cases that followed simply recognized that when a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized."); *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) (declining to address defendant's argument that his counsel was ineffective for failing to interview and call certain witnesses at a pretrial suppression hearing because it was the

type of pre-plea claim that a defendant may not assert following a guilty plea, pursuant to *Tollett*); *Cavanaugh v. Perez*, No. 9:14-CV-0651(GTS), Dkt. No. 10, Decision and Order (N.D.N.Y. Jun. 15, 2015) (finding that *Tollett* precluded federal habeas review of petitioner's claim that trial counsel's performance at the suppression hearing was deficient), *appeal dismissed by* No. 15-2064 (2d Cir. Oct. 7, 2014); *Ture v. Racette*, No. 9:12-CV-1864 (JKS), 2014 WL 2895439 at *9 (N.D.N.Y. Jun. 26, 2014) ("the *Tollett* bar . . . also applies to 'ineffective assistance claims relating to events prior to the guilty plea.'") (citation omitted); *James v. Smith*, No. 9:12-CV-0857 (FJS/ATB), 2013 WL 4519773 at *8-9 (N.D.N.Y. Aug. 26, 2013) ("Petitioner's arguments that trial counsel was ineffective in pre-plea representation, *e.g.*, by not conducting further investigation into whether the victim suffered 'physical injury' was an antecedent claim not affecting the voluntariness of his guilty plea. Such claims are effectively barred from consideration in a habeas proceeding by *Tollett* [.]"); *Harris v. Bezio*, No. 1:11-CV-0360, 2012 WL 4026488 at *6 (W.D.N.Y. Sept. 12, 2012) (pre-plea claims of ineffective assistance of counsel, including that counsel failed to object during a suppression hearing, were foreclosed by a guilty plea because the petitioner failed to demonstrate "a link between the errors purportedly committed by counsel prior to the plea and the allegedly involuntary nature of Petitioner's decision to plead guilty."); *Canal v. Donelli*, No. 9:06-CV-1490 (TJM/DRH), 2008 WL 4287385 at *3 (N.D.N.Y. Sept. 17, 2008) (petitioner's claim that counsel's performance at a suppression hearing was deficient because he failed to call witnesses, obtain "material facts and documents" for the hearing, and object at the hearing was precluded from habeas review because "all bases for that claim occurred before [petitioner] entered a plea of guilty.").  Ground One of the petition is denied and dismissed.

### B. Ground Two - Ineffective Assistance of Appellate Counsel

Petitioner claims in Ground Two of his petition, as he did in his coram nobis application, that appellate counsel was ineffective because she did not understand New York's preservation rule, causing her to raise unpreserved issues and to omit a necessary claim that trial counsel was ineffective. Pet. at 5; Mem. at 35-44. The Appellate Division's rejection of these arguments was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §§2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, __, 131 S. Ct. 1388, 1398, 1400 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" *Nevada v. Jackson*, __ U.S. __, 133 S. Ct. 1990, 1992

(2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see Metrish v. Lancaster*, __ U.S. __, 133 S. Ct. 1781, 1787 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Richter*, 562 U.S. at 103)).

Additionally, the AEDPA foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'" *Parker v. Matthews*, __ U.S. __, 132 S. Ct. 2148, 2149 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779). A state court's findings are not unreasonable under §2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro*, 550 U.S. at 473. Finally, federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)).

To demonstrate constitutionally ineffective assistance of appellate counsel, a petitioner must show: (1) that counsel's performance fell below an objective standard of professional reasonableness; and (2) but for appellate counsel's "unprofessional errors," the results of the proceedings would have been different, i.e., the error caused prejudice to the petitioner. *Smith v. Robbins*, 528 U.S. 259, 285-286 (2000); *Strickland v. Washington*, 466 U.S. 668, 694 (1984). When challenging the effectiveness of appellate counsel, a petitioner must show that counsel "omitted significant and obvious issues while pursuing issues that

were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994); *see Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000). A petitioner must show more than counsel's failure to raise a non-frivolous argument, because counsel is required to use professional judgment when deciding to concentrate on a few key issues while eliminating weaker arguments, and is not required to advance every argument urged by the petitioner. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983).

In this case, appellate counsel filed a detailed brief in which she raised two arguments she believed had the greatest chance of success. Dkt. No. 17-5 at SR 328-58, Brief for Defendant/Appellant with Appendix.[11] Counsel also successfully moved for reargument, resulting in the Appellate Division's amended decision deleting its determination that petitioner lacked standing to challenge the first eavesdropping warrant. *Hanks*, 90 A.D.3d at 1592.

But petitioner argues appellate counsel was ineffective because she did not understand the law of preservation. Specifically, he claims that she argued a free-standing, unpreserved claim that the lower court lacked probable cause to issue the fifth warrant because there were no transcripts or expert analysis of the intercepted calls, without also arguing that trial counsel was ineffective for not including that argument in his motion to suppress. Mem. at 37-41. Petitioner argues that the trial counsel ineffectiveness claim was "necessary, warranted and required for the Appellate Division to address the specific legal issue related to the lack of transcripts[.]" *Id.* at 41; Reply at 4-7. According to petitioner, had

---

[11]  In response to petitioner's inquiry into her "thought process" when writing the appellate brief, counsel stated that her "general practice" was "to make all of the arguments that I view as even remotely meritorious so as to present my clients' appeals in the best light and thereby best ensure their success or, in the alternative, preserve their rights for future habeas corpus challenges if necessary." Dkt. No. 17-24 at SR 2911, Letter from Linda M. Campbell to petitioner, dated Oct. 25, 2012.

counsel understood the law of preservation, she would have known the free-standing probable cause claim was unpreserved, and the only way it could be reviewed was by also arguing that trial counsel was ineffective for failing to include those arguments in his motion to suppress.  *Id.*; Reply at 5-8.

But based upon her motion for reargument, appellate counsel believed the probable cause claim was preserved because petitioner challenged it in the "context of his pretrial motion to suppress," and the "court below ruled on the probable cause challenge in its written Memorandum/Order denying suppression."  Dkt. No. 17-18 at SR 2146.  Additionally, counsel's understanding of the preservation rule was apparent from her successful argument that the People failed to preserve their claim that petitioner lacked standing to challenge the first eavesdropping warrant.  Dkt. No. 17-18 at SR 2142-45.  Finally, counsel likely recognized that the Appellate Division had the discretion to review any unpreserved arguments and grant relief in the interest of justice, and that it could do so in the absence of an argument trial counsel was ineffective.  CPL §470.15(6)(a); *see Sepulveda v. Lee*, No. 1:11-CV-0487, 2015 WL 5703135 at *13 (S.D.N.Y. Sept. 28, 2015) (finding that appellate counsel was not "unreasonable for raising unpreserved claims on appeal" because New York courts may review unpreserved claims in the interest of justice); *Nickels v. Conway*, No. 1:10-CV-0413, 2015 WL 4478970 at *16-17 (W.D.N.Y. Jul. 22, 2015) (rejecting petitioner's claim that appellate counsel deprived the Appellate Division of the opportunity to review a sufficiency claim by not arguing trial counsel was ineffective for failing to preserve it, or by not specifically asking the court to review it in the interest of justice, because "nothing appellate counsel did or failed to do could deprive the Fourth Department of its ability to exercise its interest-of-justice jurisdiction."); *appeal filed*, No. 15-2628 (2d Cir. Aug. 18, 2015); *Sutherland*

25

*v.* Senkowski, No. 1:02-CV-3833, 2003 WL 22953066 at *12 (E.D.N.Y. Oct. 17, 2003) ("Although an appellate counsel is limited by the trial record, he or she can raise an unpreserved issue in the hope of convincing the appellate court to review the unpreserved issue in the exercise of its interest of justice jurisdiction ... That the Appellate Division chose not to exercise its interest of justice review does not signify that the claim was frivolous.") (citation omitted).

Based on the record, the Appellate Division's rejection of petitioner's arguments as the bases for his claim that appellate counsel was ineffective was reasonable and did not contradict Supreme Court precedent. *Smith*, 528 U.S. at 289; *Evitts*, 469 U.S. at 394; *see Lopez v. Fischer*, No. 1:05-CV-2558, 2006 WL 2996548 at *12 (S.D.N.Y. Oct. 16, 2006) ("petitioner cannot show that appellate counsel's failure to raise [meritless] claims on direct appeal renders his representation below an objective standard of reasonableness, nor can petitioner show that had these claims been presented on appeal, his outcome would have been any different"); *Aparicio v. Artuz*, 269 F.3d 78, 100 (2d Cir.2001) (explaining appellate counsel is not ineffective for failing to make meritless arguments on appeal). Therefore, Ground Two of the petition is denied and dismissed.

## IV.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the petition, Dkt. No. 1, is **DENIED and DISMISSED;** and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. §

2253(c)(2) requires;[12] and it is further

   **ORDERED** that the Clerk serve copies of this Decision and Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated:  November 3, 2015

Brenda K. Sannes
U.S. District Judge

---

[12]  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has established a valid constitutional violation" (citation omitted)).